UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BREEANNA P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02551-MPB-SEB |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

Plaintiff Breeanna P. seeks judicial review of the Social Security Administration's ("SSA") decision denying her petition for Disability Insurance Benefits and Supplemental Security Income. Plaintiff claims errors in the ALJ's evaluation of her subjective complaints and third-party reports, an error at Step five in establishing that work exists in significant numbers, and at Step three by failing to find that she met listings 12.06(A)(2) and (3), (B) and (C), 12.05(A), (B), and (C), and Listing 12.15. For the reasons set forth below, the Commissioner's decision denying Plaintiff benefits is **AFFIRMED**.

**I.    FACTS AND BACKGROUND**

Plaintiff seeks judicial review of the Social Security Administration's decision denying her May 2020 application for disability insurance benefits under Title II of the Social Security Act. Plaintiff alleged disability beginning June 6, 2019. (Docket No. 7-5 at ECF pp. 2-3). After the agency denied her application, initially on August 31, 2020, and on reconsideration on October 6, 2020, Plaintiff, with the assistance of her attorney, testified at a hearing before an ALJ in March 2021; an impartial vocational expert also testified (Docket No. 7-2 at ECF pp. 34-69). In June 2021, the ALJ issued a decision finding that Plaintiff was not disabled (Docket No. 7-2 at

ECF pp. 13-29). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Docket No. 7-2 at ECF pp. 2-7). This Court has jurisdiction under 42 U.S.C. § 405(g).

Plaintiff was twenty-three years old on her alleged onset date, with at least a high school education. (Docket No. 7-2 at ECF p. 28). She had past relevant work as a retail store manager. She alleged that she was disabled due to chronic migraines, borderline personality disorder with PTSD, and depression. (Docket No. 7-6 at ECF p. 6).

In his decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a) and concluded that Plaintiff was not disabled. (Docket No. 7-2 at ECF pp. 16-29). Specifically, the ALJ found that:

- At Step One, Plaintiff had engaged in SGA from January 1, 2020, through March 31, 2020, but that there had been a continuous 12-month period during which Plaintiff had not engaged in SGA. (*Id.* at ECF p. 18).

- At Step Two, Plaintiff had the following severe impairments: asthma, migraine headaches, pseudo-tumor cerebral, benign intracranial hypertension, depression, borderline personality disorder, anxiety and post-traumatic stress disorder. (*Id.* at ECF p. 19).

- At Step Three, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, specifically considering several Listings, including 12.04, 12.06, 12.08, and 12.15. (*Id.* at ECF pp. 20-21).

- After Step Three but before Step Four, Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) except she is able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. She is never to climb ladders, ropes, or scaffolds, but is occasionally able to climb ramps and stairs, and balance, stoop, kneel, crouch, and crawl. The claimant is to avoid concentrated exposure to work at unprotected heights, moving mechanical parts, humidity, dusts, odors, fumes, pulmonary irritants and vibration. She is also limited to a work environment with moderate noise. Mentally, she is able to perform routine and repetitive work performing essentially the same tasks in the same place daily with no assembly line-paced work or work with strict hourly production quotas and no tandem work or team

tasks. Socially, she is able to interact with supervisors and coworkers occasionally with brief and superficial contact defined as now lower than in the terms of the 5th digit of the DOT Code. (*Id.* at ECF pp. 21-28).

- At Step Four, Plaintiff was unable to perform any past relevant work. (*Id.* at ECF p. 28).

- At Step Five, considering Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform," including mail clerk, routing clerk, and garment folder. (*Id.* at ECF p. 29).

## II.   APPLICABLE LAW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts." *Id.* at 217. First, it requires an inability to engage in any substantial gainful activity ("SGA"). *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.* "The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.*

When an applicant seeks judicial review, the court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In evaluating the evidence, the court gives the ALJ's credibility determinations "considerable

deference," overturning them only if they are "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating in sequence:

> (1) Whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform h[is] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2008). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The burden of proof is on the claimant for Steps One through Four, but shifts to the Commissioner at Step Five. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the court must affirm the benefit denial. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically appropriate.

4

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III. ANALYSIS

First, Plaintiff argues that the ALJ erred in evaluating her subjective statements, especially her testimony as to her job and college failures, her activities of daily living, and a third-party report from her grandmother. Moreover, she argues that the ALJ relied on outdated state agency psychologists' reports. Second, Plaintiff argues that the ALJ failed to demonstrate that work exists in significant numbers in the national economy that Plaintiff can do. Third, Plaintiff argues that she meets several of the Listings at Step three. The Court addresses each argument in turn.

A. **Subjective Symptom Evaluation**

Plaintiff argues that the ALJ erred in giving little weight to her testimony, especially to her evidence of attempts to hold SGA-level work and her college failures, as well as her grandmother's third-party-function report and the evidence of her activities of daily living.

In arriving at his determination of non-disability, the ALJ evaluated Plaintiff's subjective symptoms pursuant to 20 C.F.R. § 404.1529 and SSR 16-3p. (Docket No. 7-2 at ECF p. 21). "In evaluating a claimant's credibility, the ALJ must comply with SSR 16-3p and articulate the reasons for the credibility determination." *Karen A. R. v. Saul*, No. 1:18-cv-2024-DLP-SEB, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019). As the ALJ recognized in his decision, SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL

5

5180304, at *3 (Oct. 25, 2017). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *Id.* at *3-4.

      A court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal quotation marks and citation omitted). To satisfy this standard, the ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). An ALJ's evaluation is "patently wrong" and subject to remand when the ALJ's finding lacks any explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

      Here, the ALJ addressed Plaintiff's reports regarding the duration and frequency of her symptoms, her functional limitations, her activities of daily living, her treatment other than medication, and her work history. (Docket No. 7-2 at ECF pp. 22-23). The ALJ also discussed the objective evidence and provided a careful consideration of the evidence before ultimately concluding that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Docket No. 7-2 at ECF p. 23).

      In support of his finding, the ALJ noted that most of Plaintiff's treatment was directed around her migraine headaches, which significantly improved after she received Botox and other injective medications. (Docket No. 7-2 at ECF p. 26). The ALJ then noted that Plaintiff's condition improved to which she was able to work part-time since her alleged onset date and

obtain a second job as a nanny. (Docket No. 7-2 at ECF p. 26). The ALJ also noted that Plaintiff's ability to work, along with her ability to play with her dogs, swim, and work out was evidence that she was not as limited as she alleged and was inconsistent with her allegation that she was incapable of performing light work. (Docket No. 7-2 at ECF p. 26).

      Moreover, the ALJ's discussion of Plaintiff's medical reports reinforces the subjective symptom evaluation. The ALJ noted that by Plaintiff's alleged onset date, her communication had significantly improved, and she planned to take her time looking for a job since she had money saved. (Docket No. 7-2 at ECF p. 24, citing Docket No. 7-7 at ECF p. 280, 282). In July 2019, Plaintiff's mood was positive as she had a new job with a pay raise. (*Id.*, citing Docket No. 7-7 at ECF p. 293). In September 2019, Plaintiff applied for a customer service/retail job. (*Id.*, citing Docket No. 7-7 at ECF p. 304). In November 2019, Plaintiff's medications made a big difference in her headaches, as she had fewer headaches and they were less severe. (*Id.*, citing Docket No. 7-7 at ECF p. 362). In January 2020, she liked her new job. (*Id.*, citing Docket No. 7-7 at ECF p. 321). In February 2020, Plaintiff's medication continued to significantly reduce the frequency and severity of her headaches. (*Id.*, citing Docket No. 7-7 at ECF p. 366). In mid-May 2020, Plaintiff had two part-time jobs, as a nanny and working in a store. (*Id.*, citing Docket No. 7-7 at ECF p. 341). In September 2020, her new medication reduced her migraines, and she was able to go to Holiday World. (*Id.*, citing Docket No. 7-7 at ECF p. 44). In January 2021, she was working as a cashier. (*Id.*, citing Docket No. 7-7 at ECF p. 399).

      The ALJ found Plaintiff was not disabled because he believed the record showed that, despite her impairments, she remained capable of performing a significant number of jobs in the national economy. (Docket No. 7-2 at ECF pp. 28-29). The ALJ's step-three finding had no

impact on his evaluation of her subjective complaints, as the ALJ relied upon other factors, including her improvement with treatment and her ability to work.

With regards to the hearing testimony, specifically, Plaintiff's alleged meltdowns, the ALJ discussed Plaintiff's reports of panic attacks, mood swings, and reports of two to three meltdowns a week. (Docket No. 7-2 at ECF p. 25). Therefore, Plaintiff's argument amounts to a request to reweigh the evidence, which is beyond the Court's purview on review. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner.") (internal citation omitted). Furthermore, Plaintiff's discussion regarding her various impairments does not explain what it demonstrates about her functioning, particularly, given that the ALJ found the majority of the referenced impairments were severe. (Docket No. 7-2 at ECF p. 19).

Similarly, the ALJ provided ample review of the Plaintiff's testimony regarding her work attempts during the relevant period. (Docket No. 7-2 at ECF p. 22). For example, he acknowledged that she changed jobs because of stress, that she currently works 20 hours per week, that she was fired from a previous job for not making quota, that she claims she is unable to work because she is always late and would miss 4-5 days of work per month, and that she has panic attacks before work. (*Id.*). The ALJ contrasted this hearing testimony with the many references to her work after the alleged onset date in the medical records. Again, to hold this discussion was an error would amount to an improper reweighing of the evidence.

Further, the ALJ discussed Plaintiff's grandmother's third-party function report and Plaintiff's headache forms within his evaluation of Plaintiff's subjective complaints. (Docket No. 7-2 at ECF pp. 22, citing Docket No. 7-6 at ECF pp. 29-38; Docket No. 7-6 at ECF pp. 44-51;

8

Docket No. 7-7 at ECF p. 80). He found Plaintiff's grandmother's statements to be somewhat consistent with the record. (*Id.*). "ALJs are not required to discuss every piece of evidence, and that principle applies equally to a credibility assessment." *Sawyer v. Colvin*, 512 F. App'x 603, 607 (7th Cir. 2013) (internal citations omitted).

The Court holds that the ALJ did not improperly cherry-pick the evidence that he discussed. While the ALJ discussed Plaintiff's presentation of a happy or positive mood in the record, he was comparing and contrasting her various medical reports. The ALJ considered the occasions where Plaintiff presented as happy or positive against those where she presented as depressed or distressed (Docket No. 7-2 at ECF pp. 24-26) and that was relevant to her functioning given that she was claiming disability due to depression (Docket No. 7-6 at ECF p. 6). The records show that the ALJ gave an even-handed summary of the medical reports. For example, he noted that, in July 2019, Plaintiff presented in a distressed mood (Docket No. 7-2 at ECF pp. 24-25, citing Docket No. 7-7 at ECF p. 290); in June 2020, Plaintiff had some anxiety over the anniversary of her mother's passing (*Id.*, citing Docket No. 7-7 at ECF p. 479); in July 2020, Plaintiff reported that most days were "meh" and that in the last two weeks her depression has been creeping in with constant worry and panic attacks (*Id.*, citing Docket No. 7-7 at ECF p. 421); and in January 2021, Plaintiff reported two to three meltdowns a week (*Id.*, citing Docket No. 7-7 at ECF p. 399).

Plaintiff argues that "[t]he ALJ even stated that she has had migraines since 2001 causing pain behind her eyes and blurred vision, nausea, vomiting, sensitivity to light and sound, has approximately five migraines per week, lasting a few hours at a time and can only lie in bed for relief." (Docket No. 16 at ECF p. 14, citing Docket No. 7-2 at ECF p. 22). Yet, Plaintiff argues, the ALJ discounted Plaintiff's grandmother's report. But, here, the ALJ was merely summarizing

9

the information contained in Plaintiff's headache form, not rendering a finding; thus, there was no inconsistency.

Plaintiff also notes that the vocational expert testified that a limitation that required her to be off work two workdays per month would preclude competitive employment, but the ALJ decided, appropriately, that substantial evidence did not necessitate such a limitation in the RFC. *See Cass v. Shalala*, 8 F.3d 552, 555-556 (7th Cir. 1993) ("This court has twice before stated that when considering the appropriateness of an hypothetical question posed to a vocational expert '[a]ll that is required is that the hypothetical question be supported by the medical evidence in the record.'") (internal citations omitted).

Lastly, Plaintiff argues that the state agency findings were outdated and, thus, that the ALJ's reliance on the same was improper. But, the Seventh Circuit has held that "[i]t is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (internal citation omitted). Of course, an ALJ cannot rely on state agency findings when later evidence contains new and significant medical diagnoses that could have changed the physician's assessment. *Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2019). Here, there has been no showing that a new and significant diagnosis was contained in the later submitted records. The state-agency physicians and psychologists found that Plaintiff had the following severe impairments: migraines, benign brain tumor, obesity, depression/bipolar, personality disorder, and trauma disorder. (Docket No. 7-3 at ECF pp. 8, 23). Several mental health records from the newly submitted exhibits confirm these diagnoses. (Docket No. 7-7 at ECF pp. 401, 423-424, 426, 431, 436, 439, 442, 446, 449, 452, 455, 458, 460, 463, 466, 470, 472, 475, 477, 479, 482). As for the remaining records, these show that Plaintiff had a cough,

shortness of breath, and/or mild persistent reactive airway disease. (Docket No. 7-7 at ECF pp. 396, 413, 416, 420, 496). This does not constitute the significant diagnosis or worsening symptoms contemplated by the Seventh Circuit that would preclude reliance on the state-agency consultants. Moreover, Plaintiff has not shown any specific limitation that the ALJ should have included, but did not, nor pointed to any opinion or other evidence that compelled further limitations. See *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) (citing *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)) ("And notably, it is 'unclear what kinds of work restrictions address [Plaintiff's] limitations in concentration, persistence, or pace because he hypothesizes none.").

In sum, the ALJ's subjective symptom evaluation was not patently erroneous nor has the Plaintiff otherwise adequately established error as to her first argument.

**B. Step Five, Significant Number of Jobs in the National Economy**

Next, Plaintiff argues that the ALJ failed to demonstrate that work exists in significant numbers in the national economy that the Plaintiff can do, given her RFC, age, education, and work experience. She argues another district court in this Circuit found 120,350 jobs in the entire nation was not a significant number on which to deny benefits, and that number is akin to the 121,000 jobs in the entire nature that the vocational expert testified to in this case. Moreover, Plaintiff extrapolates that data to a regional level to reason that only a total of 2420 of these jobs are available in Indiana, which is far less than the regional jobs available in the case on which Plaintiff relies. (*See* Docket No. 16 at ECF p. 18).

At step five, the ALJ found Plaintiff was capable of mail clerk with 15,000 jobs nationally, routing clerk, with 100,000 jobs nationally, and a garment folder, with 6,000 jobs nationally, for a total of 121,000 jobs in the national economy. (Docket No. 7-2 at ECF p. 29). In

11

*Primm v. Saul*, 789 F. App'x 539, 546 (7th Cir. 2019), the Seventh Circuit held that two positions totaling 110,000 jobs in the national economy were sufficient to uphold the Commissioner's burden. Moreover, this District Court just held this year that 60,000 jobs, half the jobs present here, were sufficient to meet the Commissioner's burden. *Russell S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-391-TAB, 2022 WL 1401340, at *7 (S.D. Ind. May 4, 2022). Further, a more recent decision from the Northern District of Indiana held that "[w]hile 120,000 jobs may make up only a small portion of the total jobs in the national economy, such a number is 'significant' in the context of the relevant caselaw." *Knapp v. Saul*, 2021 WL 536121, at *4 (N.D. Ind. Jan. 27, 2021), adopted by 2021 WL 536483 (N.D. Ind. Feb. 12, 2021). As to the regional numbers, first, the numbers Plaintiff provides are her own post-hoc estimate, as the vocational expert did not testify about regional job numbers. But, the Seventh Circuit has held that as few as 174 regional jobs are sufficient to meet the standard for a significant number, which is higher than Plaintiff's estimate of 2,420 regional jobs. No error has been presented as to the ALJ's Step Five analysis.

### C. Step Three, Listings 12.06(A)(2) and (3), (B) and (C); 12.05(A), (B), and (C); and Listing 12.15

Finally, Plaintiff argues that the ALJ erred because she meets the medical impairment Listing 12.05, Listing 12.06, and Listing 12.15. At Step Three, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of it. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003). Plaintiff has the burden of showing that her impairments met or medically equaled a listing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) (internal citation omitted). Specifically, Plaintiff must show that her conditions "meet *all* of the specified medical criteria [since a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (internal citations omitted) (emphasis in original).

12

To start, Plaintiff states that she "also submits that in combination, she also meets 12.05(A), (B) and (C)." (Docket No. 16 at ECF p. 18). However, she never further develops that argument. Moreover, Listing 12.05 (Intellectual disorders) only has two paragraphs that are unique to that listing. Plaintiff references three paragraphs and does not identify what they are. This undeveloped argument is waived.

To meet Listing 12.06 (Anxiety and obsessive-compulsive disorders) or Listing 12.15 (trauma-and stressor-related disorders), a claimant's impairments must satisfy the "paragraph A" criteria, as well as satisfy either "paragraph B" or "paragraph C" criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.06; 12.15. In evaluating mental disorders, the "paragraph B" of each of the listings "represent[s] the areas of mental functioning a person uses in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b). A claimant can satisfy the "paragraph B" criteria by showing "[e]xtreme limitation of one, or marked limitation of two," of the following abilities: 1. Understand, remembering, or applying information; 2. Interacting with others; 3. Concentrating, persisting, or maintaining pace; 4. Adapting or managing oneself. *See id.* §§ 12.06(B), 12.15(B) (citations omitted). "Marked" restrictions or difficulties are serious limitations of the ability to function "independently, appropriately, effectively, and on a sustained basis" in a given area, representing a four on a five-point scale, with one being no limitation and five being "extreme limitation" (essentially not functioning at all) in a given area. *Id.* § 12.00(F)(2). The "paragraph C" criteria are used "to evaluate mental disorders that are 'serious and persistent,'" recognizing that "mental health interventions may control the more obvious symptoms and signs of [a claimant's] mental disorder. § 12.00(G)(1) (internal quotation marks omitted). A mental disorder meets the paragraph C criteria if there is:

> [A] medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

13

> 1. Medical treatment, mental health therapy, psychosocial support(s) or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder; and
>
> 2. Marginal adjustment, that is . . . minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life.

*See id.* §§ 12.06(C) and 12.15(C) (citations and emphasis omitted).

The ALJ found at step two that Plaintiff's depression, borderline personality disorder, anxiety, and post-traumatic stress disorder were severe impairments. (Docket No. 7-2 at ECF p. 19). The ALJ then found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listing, with specific analysis of, among other listings, Listings 12.04, 12.06, 12.07, and 12.15. (Docket No. 7-2 at ECF pp. 19-21). The ALJ specifically analyzed the paragraph B and paragraph C criteria.

In reaching this conclusion, the ALJ initially noted that the state agency examiners—the only doctors of record to speak on the matter—had not found that Plaintiff's impairments met or medically equaled a listing. (Docket No. 7-2 at ECF p. 19). The ALJ then evaluated Plaintiff's impairments under the paragraph B criteria and determined that she had mild limitations in understanding, remembering, or applying information, and moderate limitations in interacting with others, concentration, persistence, and pace, and adapting and managing oneself. (Docket No. 7-2 at ECF pp. 20-21). The ALJ concluded that since Plaintiff did not have two marked or one extreme limitation in functioning, the paragraph B criteria were not satisfied. (Docket No. 7-2 at ECF pp. 20-21). The ALJ also found that the medical evidence and testimony failed to establish the presence of the paragraph C criteria. (Docket No. 7-2 at ECF p. 21). The ALJ noted that no acceptable medical source mentioned findings equivalent in severity to the criteria of any listed impairment, either individually or in combination. (Docket No. 7-2 at ECF p. 21).

The ALJ provided further explanation for his paragraph B analysis. *See Ralph R. v. Saul, No. 2:20-cv-00035-JMS-MJD, 2020 WL 5640441, at \*6 (S.D. Ind. Aug. 18, 2020)* (the ALJ's step-three analysis is sufficient when "he referred to the listing by name, listed the requirements of the listing that were not met, and detailed [Plaintiff's] various knee procedures and other relevant medical evidence in [his] RFC assessment."). As support for his finding of mild limitations in understanding, remembering, or applying information, the ALJ noted that while Plaintiff alleged difficulty with remembering generally and completing tasks, she admitted being proficient in following instructions, she worked above the substantial gainful activity threshold level during a period after her alleged onset date, and she worked part-time as a store manager, cashier, and nanny. (Docket No. 7-2 at ECF p. 26, citing Docket No. 7-6 at ECF pp. 5-12, 29-38, 44-51; Docket No. 7-7 at ECF pp. 262-343, 385-388, 395-484). The ALJ then noted that Plaintiff independently went to doctor's appointments and took her medications, on mental status examinations she showed normal memory and intelligence, and she was able to follow instructions. (Docket No. 7-2 at ECF pp. 26-27). The ALJ further noted that Plaintiff was able to provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment outside of the doctor's office or hospital, and respond to questions from medical providers. (Docket No. 7-2 at ECF p. 27).

Next, the ALJ explained that Plaintiff had moderate limitations in interaction with others. (Docket No. 7-2 at ECF p. 27, citing Docket No. 7-6 at ECF pp. 5-12, 29-38, 44-51; Docket No. 7-7 at ECF pp. 262-343, 385-388, 395-484) because while she alleged difficulty engaging in social activities and became overwhelmed with panic attacks when she was in public or around people; she also stated that she was able to get along with others, spend time with friends, family, and children, work at retail stores and as a nanny, appropriately deal with authority, and live with

others. (Docket No. 7-2 at ECF p. 27). The ALJ then noted that the medical evidence showed that Plaintiff had a good rapport with her providers, she was described as pleasant and cooperative, she had good interactions with non-medical staff, and she appeared comfortable during appointments. (Docket No. 7-2 at ECF p. 27). The ALJ also noted that Plaintiff had many situational stressors outside of her control, such as her parents passing away and her mother being in jail, but she was able to continue to work and was even thinking of going to school. (Docket No. 7-2 at ECF p. 27). The ALJ further noted that the reason that Plaintiff quit work was to have some time off since she had saved up money. (Docket No. 7-2 at ECF p. 27). The ALJ added that parents dying would cause stress on anyone and having all of these stressors at once could be overwhelming; and therefore these stressors were not organic in nature. (Docket No. 7-2 at ECF p. 27).

Third, the ALJ concluded that Plaintiff had moderate limitations in concentration, persistence, and pace. (Docket No. 7-2 at ECF p. 27, citing Docket No. 7-6 at ECF p. 5-12, 29-38, 44-51; Docket No. 7-7 at ECF pp. 262-343, 385-388, 395-484). While Plaintiff claimed to have limitations in concentration and focusing generally and in completing tasks, she admitted that she had worked since her alleged onset date and had up to two jobs, working at the tobacco shop and as a nanny. (Docket No. 7-2 at ECF p. 27). The ALJ also noted that Plaintiff was able to maintain her activities of daily living, handle her own medical care, maintain her finances, and take her medication as prescribed. (Docket No. 7-2 at ECF p. 27).

Lastly, the ALJ explained his determination that Plaintiff had moderate limitations in adapting and managing herself. (Docket No. 7-2 at ECF p. 27; Docket No. 7-6 at ECF pp. 5-12, 29-38, 44-51; Docket No. 7-7 at ECF pp. 262-343, 385-388, 395-484). The ALJ noted that Plaintiff asserted that she had difficulties managing her mood, but that she also stated that she

could handle her self-care, personal hygiene, and daily activities. (Docket No. 7-2 at ECF p. 27). The ALJ also noted that the objective evidence showed that Plaintiff had appropriate grooming and hygiene, there were no problems getting along with providers and staff, her mood and affect were normal, she had no problems with her temper, and during most visits her mood was good. (Docket No. 7-2 at ECF p. 27). The ALJ added that because Plaintiff's condition dramatically improved after she was able to deal with her parents' deaths and she worked since her alleged onset date, she was, at most, moderately limited. (Docket No. 7-2 at ECF p. 27).

      Plaintiff alleges that her testimony about her panic attacks and meltdowns were supported by the medical evidence and her continuous treatment. But, Plaintiff fails to explain how her testimony detracts from the ALJ's paragraph B finding or analysis. "If the findings of the ALJ are supported by substantial evidence, they are conclusive." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) (internal citation omitted). While Plaintiff relies on her report from July 2020, she only discusses her subjective reports from the History of Present Illness section. (Docket No. 16 at ECF p. 19, citing Docket No. 7-7 at ECF p. 421), and that "is not a portion of the treatment note where a doctor offers an objective assessment or opinion. Rather, this section 'merely reflects the patient's subjective statements about the problem for which she is seeking care and a history of that problem, if any.'" *Larissa V. v. Saul*, No. 1:20-cv-00470-SEB-DLP, 2021 WL 1556892, at *15 (S.D. Ind. Apr. 19, 2021) (internal citation omitted), adopted *sum nom. Larissa V. v. Kijakazi*, 2021 WL 3560660 (S.D. Ind. Aug. 10, 2021). The objective results from the examination fail to demonstrate the severity required by the listing as Plaintiff was observed to have good hygiene, she was friendly and cooperative, there was no psychomotor slowing or agitation, her affect was euthymic, her thought processes were logical, sequential, and organized, there was no speech abnormality or hallucinations, she was good with abstractions and

calculations and could accurately recite the months of the year, there were no delusions or suicidal ideation, and her insight and judgment were adequate. (Docket No. 7-7 at ECF p. 423).

With regards to Listing 12.15, Plaintiff cites generally to exhibits in the record without laying the groundwork to corroborate her argument. Plaintiff has the burden of establishing that her impairments meet a listing, and her cursory reference to the evidence fails to meet her burden. *Maggard*, 167 F.3d at 380. A review of the cited evidence fails to show that Plaintiff's impairments met the severity required by the listing. The mental status examination findings in Exhibit 9F were generally normal. (Docket No. 7-7 at ECF pp. 396, 401, 423). The referenced mental examination pre-dates Plaintiff's alleged onset date by nine months (Docket No. 7-2 at ECF p. 16) and was generally unremarkable except for poor remote memory. (Docket No. 7-7 at ECF p. 262). Dr. Nordstrom's consultative examination findings were generally normal. The doctor observed that Plaintiff was good on proverbs and similarities/differences, she could repeat three words immediately and recall three words after a five-minute delay, and her recent and past recall for information, calculations, and insight and judgment were good. (Docket No. 7-7 at ECF pp. 386-387). Dr. Nordstrom also found that Plaintiff's fund of information was good, her mood was fairly euthymic with a broad affect, her speech was relevant, there were no signs of hallucinations, delusions, or unusual thoughts, her thought processes appeared logical, her behavior was goal-oriented, and she was cooperative and polite. (Docket No. 7-7 at ECF p. 387). Finally, he added that Plaintiff presented as intelligent and articulate, her long-term memory appeared grossly intact, she had a fairly good ability to sustain concentration, fairly good social skills, and she would likely get along well with others. (Docket No. 7-7 at ECF p. 388).

Plaintiff's contention that she only had marked or extreme restrictions when she was having a meltdown or panic attack and, the rest of the time, she had at least moderate limitations

in the paragraph B criteria shows that her impairments cannot meet a listing. The "regulations make no provision, . . . for claimants whose condition is reasonably found to be sporadic or intermitted." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), aff'd *sub. nom. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). Finally, Plaintiff fails to point to any medical evidence showing that her impairments met or medically equaled Part C of the listing. While she notes her mental health therapy, she only generally argues that she has minimal capacity to adapt to changes in environment or to demands that are not already part of it, without applying evidence to that contention. She does not meet her burden.

In sum, we find Plaintiff has not met her burden at Step Three to necessitate remand.

## IV. CONCLUSION

For all these reasons, the Court **AFFIRMS** the ALJ's opinion.

**SO ORDERED** the 30th day of September, 2022.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.